UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
KELLI FIELDS,

                      Plaintiff,                      **MEMORANDUM & ORDER**

       - against -                           17-CV-6042 (PKC) (CLP)

NEW YORK CITY HEALTH AND
HOSPITAL CORPORATION,

                      Defendant.
-------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Plaintiff Kelli Fields, appearing *pro se* and proceeding *in forma pauperis*, brings this action against Defendant New York City Health and Hospitals Corporation ("Defendant")[1] pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified, 42 U.S.C. Sections 2000e *et. seq.* and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et. seq*. Before the Court is Defendant's motion to dismiss. For the following reasons, Defendant's motion to dismiss is granted and this action is terminated.

## RELEVANT FACTS[2]

Plaintiff began working as a Clerical Assistant Level III at Kings County Hospital Center ("KCHC") in October 2016. (Amended Complaint ("Am. Compl."), Dkt. 17, at 1.)[3] Plaintiff

---

[1] Defendants Kings County Hospital, Carol McCowan, Tricia Lynch, Frecmi Rosario, Hyancinth Dasilva, and Vincent Mulvihill have been terminated from the case. (*See* ECF Entry 5/18/2018.)

[2] Because this is a motion to dismiss, the Court accepts as true the facts alleged in Plaintiff's original complaint, as well as in her amended complaint. *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

[3] Record citations refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

asserts that her supervisor, Assistant Coordinating Manager Carol McCowan, inquired about Plaintiff's nationality on Plaintiff's first day of employment. (*Id.* at 2.) Plaintiff states that she is African-American, but her co-workers, including McCowan, are of West Indian descent. (*Id.* at 1-2.) Plaintiff alleges that McCowan told her that KCHC was a "West Indian Hospital" and that Plaintiff felt "attack[ed]" by McCowan. (*Id.* at 2.) Plaintiff states that she witnessed the "friendly support" that McCowan gave to Plaintiff's West Indian co-workers[4], which made Plaintiff feel "harass[ed]" and "uncomfortable" by comparison. (Plaintiff's Opposition ("Pl. Opp'n"), Dkt. 14, at 2.) Plaintiff alleges that McCowan failed to "abide by KCHC's policy for employees to request time off", even though McCowan approved of Plaintiff's absences "verbally, via phone, and via text." (Am. Compl. at 2.) Plaintiff states that McCowan allowed Plaintiff's West Indian colleagues to "call out"[5] from their assigned shifts, but that McCowan never gave Plaintiff the same opportunity. (*Id.*) Plaintiff alleges that McCowan forced her to stay later and work more hours than her West Indian colleagues and showed Plaintiff "unfavorable treatment by holding up [her] paychecks, which [McCowan] did not do for any West Indian Coworkers." (*Id.* at 4.)

Plaintiff claims that McCowan's statements led her to feel that her status as an African-American was "not accepted" and that to be West Indian "was its own race." (Complaint

---

[4] At oral argument on Defendant's motion, held on July 17, 2018, Plaintiff identified three West Indian co-workers whom she believed McCowan treated more favorably with respect to unscheduled sick leave: "Natasha", "Maria St. Nicholas", and "Trisha." Plaintiff claimed that she was aware of the number of her co-workers' "call-out" days because of the attendance log into which they all made entries.

[5] At the July 17 oral argument, Plaintiff and defense counsel clarified that "calling out" referred to unscheduled sick leave, which was subject to approval or rejection *post hoc* for purposes of the employee being compensated or not for the time the employee was out sick. Defense counsel stated that the granting of unscheduled sick leave was a payroll issue, distinct from the disciplinary issue of how many unscheduled sick leave days an employee took within a certain period.

("Compl."), Dkt. 1, at 5.)[6] Plaintiff stated that she complained to the Human Resources office ("Human Resources") at KCHC in November 2016 that her "tour/shift was in jeopardy due to [her] race/nationality." (Pl. Opp'n, at 3.) Plaintiff also alleges that she tried to complain again in March of 2017 by contacting Vincent Mulvihill,[7] Deputy Executive Director of the Department of Medicine, but he said that "he was covering to[o] many areas and it would take some weeks to speak to [her]." (*Id.* at 4.)

Plaintiff was terminated from KCHC on May 19, 2017 (Am. Compl., at 4), five months before her probationary period expired in October 2017. (*Id.*, at 1.) Plaintiff filed her charge with the Equal Employment Opportunity Commission ("EEOC") after her termination in May of 2017. (*Id.* at 5.) The EEOC issued a notice of right to sue letter in July 2017. (*Id.*) Plaintiff alleges that she filed a complaint with "Human Rights"[8] in September 2017, and eventually received a response from KCHC, which she alleges "defamed" her character. (*Id.*)

## PROCEDURAL HISTORY

Plaintiff filed her complaint in this action on October 10, 2017, alleging discrimination and retaliation, pursuant to Title VII and NYCHRL, as well as defamation of character. Plaintiff seeks to recover: (1) her "position as Clerical Assistant Level III"; and (2) "any wages lost rep[aid]." (Compl., at 6.)

---

[6] Plaintiff omits certain facts related to her Title VII claim in her amended complaint that were included in her original complaint. (*See* Dkts. 1, 17.) Although it is clearly established law that a plaintiff's amended complaint completely replaces the original complaint, *Arce v. Walker*, 139 F.3d 329, 332 n. 4 (2d Cir. 1998), in light of Plaintiff's *pro se* status, the Court will consider the amended complaint as supplementing, as opposed to replacing, Plaintiff's original factual allegations.

[7] Plaintiff notes that Vincent Mulvihill is "Caucasian." (Am. Compl., at 1.)

[8] Plaintiff appears to be referring to the New York State Division of Human Rights ("NYSDHR").

3

On January 29, 2018, Defendant moved to dismiss the complaint in its entirety. (Dkt. 11.) Plaintiff filed her opposition on March 19, 2018 (Dkt. 14), and Defendant replied on April 5, 2018 (Dkt. 15). In her opposition, Plaintiff asked to file an amended complaint, which the Court granted. The Court gave Defendant until June 15, 2018 thereafter to supplement its motion to dismiss. Plaintiff filed an amended complaint on May 18, 2018 (Dkt. 17), and Defendant supplemented its motion to dismiss on June 15, 2018 (Dkt. 18). The Court held oral argument on Defendant's motion to dismiss on July 17, 2018. As stated *supra*, the Court construes Plaintiff's opposition as amending her complaint and addresses her new claims.

## **STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

"In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein*, 708 F.3d 82 at 94. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). At the same time, pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines that the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

I. **Plaintiff Fails to State a Claim under Title VII**

A. **Plaintiff Fails to State a Claim for Discrimination**

Plaintiff asserts a claim under Title VII for employment discrimination based upon race and national origin. To state a cause of action under Title VII, a plaintiff must set forth facts demonstrating that (1) she is a member of a protected class; (2) she satisfactorily performed her job; (3) she was subjected to adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination based on her membership in the protected class. *Belfi v. Prendergast*, 191 F.3d 129, 140 (2d Cir. 1999). With regard to the fourth prong, a plaintiff must allege that an adverse employment action was taken against her because of discriminatory animus on the part of her employer. *Id.* at 139.

Here, Plaintiff's alleged facts are insufficient to show that she was subjected to an adverse employment action because of her membership in a protected class. Although Plaintiff claims that she was treated differently than her West Indian co-workers, her allegations are conclusory. For example, Plaintiff alleges that McCowan's statements made her feel that "being African American was not accepted" and that she was "harassed." (Compl., at 5.) Yet Plaintiff does not provide any details about how African-Americans like herself were excluded or the nature of the harassment that she experienced. Plaintiff also claims that McCowan failed to "abide by KCHC's policy for

employees to request time off" by allowing Plaintiff's West Indian co-workers to "call out" from their assigned shifts, but denying Plaintiff the same opportunity. (Am. Compl. at 2.) Yet Plaintiff offers no facts that these adverse employment actions were related to her status as an African-American. Similarly, Plaintiff's allegation that "McCowan singled [her] out from [her] West Indian co-workers" by re-assigning her to work in the "E building for the entire day" is conclusory (*Id.* at 3); she offers no context or support that her re-assignment was the result of discrimination. The same is true of her allegation that McCowan forced Plaintiff to work later than her West Indian colleagues or withheld her paychecks; there is simply no evidence that these actions were motivated by discriminatory animus. As a result, Plaintiff provides no causal evidence linking her protected status as an African-American to the adverse employment actions that she claims. *See Edwards v. New York State Unified Court Sys.*, No. 12-CV-46 (WHP), 2012 WL 6101984, at *4 (S.D.N.Y. Nov. 20, 2012) (explaining that a plaintiff "must show that the adverse employment actions occurred 'because of a protected characteristic'" and that "[t]he plaintiff's claim must offer more than conclusory statements") (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).[9]

At most, Plaintiff asserts that McCowan's ethnic and racial bias is demonstrated by her alleged reference to KCHC as a "West Indian Hospital" and her inquiry into Plaintiff's country of origin soon after Plaintiff began working at KCHC. However, these scant, isolated references are

---

[9] Furthermore, as Defendant argued in its motion and elaborated on at oral argument, Plaintiff cannot rely on her West Indian co-workers as comparators because Plaintiff was on probationary status and the co-workers were not. While Plaintiff alleges that she was informed by KCHC's office of labor relations that the policies on unscheduled sick leave were the same for probationary and regular employees, defense counsel maintained at oral argument that KCHC's actual policies—which defense counsel urged the Court to take judicial notice of, given Plaintiff's incorporation and reliance on them in her complaint—treated probationary and regular employees differently and that probationary employees could be terminated for taking three or more unscheduled sick leave days within the one-year probationary period, whereas regular employees would instead be subject to progressive discipline for the same conduct.

not enough to allege discrimination under the fourth element of Title VII. *See Gonzalez v. Allied Barton Sec. Servs.*, No. 08-CV-9291 (RJS) (RLE), 2010 WL 3766964, at *5 (S.D.N.Y. Sept. 7, 2010) (explaining that "isolated derogatory remarks . . . alone do not raise an inference of discrimination.") *report and recommendation adopted*, 2010 WL 3766954 (S.D.N.Y. Sept. 27, 2010). Furthermore, Plaintiff offers no allegations in the complaint connecting McCowan's statement to any adverse employment action taken against Plaintiff. *See Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (finding that "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination.") *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). In short, Plaintiff's complaint, even as supplemented by her statements at oral argument, fails to assert "nonconclusory factual matter[s] sufficient to nudge [her] claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quotation marks and citation omitted).

To the extent that Plaintiff alleges a hostile work environment, this claim also fails. To establish a hostile work environment under Title VII, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of NY*, 795 F.3d 297, 320-21 (2d Cir. 2015) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Here, Plaintiff merely alleges that McCowan questioned her about other co-workers in a "hostile" manner, in addition to the adverse actions addressed above. (Am. Compl., at 2.) This is not enough to show that Plaintiff was subjected to a hostile work environment on the basis of race or national origin. *Dechberry v. NYC. Fire Dep't*, 124 F. Supp. 3d 131, 158 (E.D.N.Y. 2015) (finding plaintiff's conclusory allegations that she

7

suffered "disrespectful treatment, retaliation and harassment" insufficient to plead hostile work environment claim). Because Plaintiff has not alleged sufficient facts from which to plausibly infer that her workplace was "permeated with discriminatory intimidation, ridicule, and insult," the Court finds that Plaintiff's conclusory allegations fail to state a hostile work environment claim under Title VII.

B.     **Plaintiff Fails to State a Claim of Retaliation**

Plaintiff also attempts to state a cause of action under Title VII for retaliation. To establish a prima facie retaliation claim under Title VII, a plaintiff must allege (1) participation in a protected activity, (2) the defendant's knowledge of the protected activity, (3) an adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. *See Littlejohn*, 795 F.3d at 316.

Plaintiff does not establish a prima facie retaliation claim because she fails to satisfy, at a minimum, the fourth prong of the test. Plaintiff alleges that she was terminated in retaliation for her complaints to KCHC management.[10] However, Plaintiff has not alleged facts sufficient to

---

[10] Although Plaintiff's complaint suggested that she was alleging that KCHC's written response to her NYSDHR complaint, in itself, was a retaliatory adverse employment action (Am. Compl., at 5 ("The response sent [to] Human Rights from Kings County Hospital Center I feel is a retaliation letter due to my seeking further assistance regarding this matter.")), Plaintiff clarified at oral argument that KCHC's response was what revealed to her that her *termination* was ordered in retaliation for her complaints to Human Resources and her supervisors. It should be noted that KCHC's written response to the NYSDHR complaint would not constitute an adverse employment action. *See Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010) (quotations and citation omitted) (adverse actions, for purposes of a retaliation claim, are those that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (examples of adverse employment actions "include termination of employment, a demotion evidenced by a decrease in wage or salary . . . [or] significantly diminished material responsibilities . . .") (citation omitted).

show a causal connection between any protected activity and her termination. To the extent Plaintiff alleges that her complaints to Human Resources and Vincent Mulvihill prompted her termination, the Court finds that Plaintiff has failed to show any causal nexus to retaliation. On November 15, 2016, Plaintiff emailed Lakisha Kimble at the Human Resources office about a "misunderstanding" related to her work assignment. (Dkt. 17, at 9.) Lakisha Kimble responded that Plaintiff should give her a call. (*Id.*) Similarly, on March 15, 2017, Plaintiff wrote an email to Mulvilhill stating that she wanted to discuss "a letter of counseling" and that "other co-workers receive different treatment." (Dkt. 17, at 11.) According to Plaintiff, Mulvihill responded that he would ask his secretary to find some time, but that it may "take a few weeks to meet." (*Id.*) These email exchanges provide no facts connecting a protected activity to an adverse employment action. Given the responses that Plaintiff herself says she received, she does not explain how her exchanges with Kimble or Mulvihill would dissuade a reasonable employee from contacting these individuals to make a "charge of discrimination."

Moreover, Plaintiff's complaint to Human Resources in November 2016 was too remote in time from her May 2017 termination to constitute retaliation. Although "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action" can be evidence of causal connection, a plaintiff's prima facie burden is met only if the "temporal proximity [is] 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001). Here, at least six months elapsed between the complaint and Plaintiff's termination, which, by itself cannot serve as evidence of retaliation. *See Mazurkiewicz v. N.Y.C. Health & Hosps. Corp.*, 09-CV-5962 (WHP), 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010) (explaining that "[t]he Second Circuit often utilizes a two month window to determine whether the temporal

connection between the protected activity and alleged retaliation is sufficiently close or too attenuated") (citation omitted).

## II. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's NYCHRL and Common Law Claims

In light of the dismissal of Plaintiff's Title VII claims, the Court declines to exercise supplemental jurisdiction over her NYCHRL and defamation claims. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (a district court's decision "whether to exercise [] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 263 (2d Cir. 2006) (the decision whether to exercise supplemental jurisdiction is entirely within the court's discretion and is not a "litigant's right"); *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 445 (2d Cir. 1998) (finding that courts must determine whether to continue to exercise supplemental jurisdiction "at every stage of the litigation.").[11]

## **CONCLUSION**

For the reasons stated herein, the Court grants Defendant's motion to dismiss the complaint in this action, as well as the claims raised in Plaintiff's amended complaint and at oral argument.

---

[11] In any event, Plaintiff's claim for defamation of character would fail under Rule 12(b)(6). "Under New York law, the elements of a defamation claim are 'a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation per se.'" *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)). A statement has a defamatory meaning if it "'tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'" *Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996) (quoting *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977)). Even if the Court exercised supplemental jurisdiction over Plaintiff's defamation claim, the Court would have to dismiss this claim because there is no allegation establishing that Defendant's response to Plaintiff's NYSDHR complaint was not privileged or authorized, and because Plaintiff fails to allege facts demonstrating that she was exposed to "public contempt, ridicule, aversion or disgrace" as a result of Defendant's statements. *Id.*

While the Court appreciates that Plaintiff genuinely feels aggrieved by the conduct of her supervisors at KCHC and that Plaintiff's termination from KCHC has had significant consequences for Plaintiff and her family, she has not adequately alleged facts from which to infer that this conduct was motivated, in any way, by racial or ethnic animus. The Court certifies pursuant to 28 U.S.C. 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully requested to enter judgment and terminate this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 20, 2018
      Brooklyn, New York